IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| JASON D. CUMMINGS, | ] |
| | ] |
|     Plaintiff | ] |
| | ] |
| v. | ]   CV-08-BE-0433-NE |
| | ] |
| MICHAEL J. ASTRUE, Commissioner | ] |
| of the Social Security Administration | ] |
| | ] |
|     Defendant. | ] |

## MEMORANDUM OPINION

Plaintiff Jason Cummings applied for disability insurance benefits and supplemental security income benefits on September 12, 2005. The Commissioner denied the claims. The plaintiff then requested and received a hearing before an Administrative Law Judge. On September 6, 2007, the ALJ held that Cummings was not disabled within the meaning of the Social Security Act, and, therefore, was not eligible for DIB or SSI payments. Cummings then applied to the Appeals Council for review. On January 10, 2008, the Appeals Council denied Cummings' request for review. This denial constituted the final decision of the Commissioner of Social Security and the exhaustion of Cummings' administrative remedies. The case is now before the court for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Based on the court's review of the record in this case and the parties' briefs, the court concludes that the decision of the Commissioner should be affirmed.

## ISSUES PRESENTED

In this appeal, Cummings argues that the Commissioner erred in two ways. First,

Cummings alleges that the ALJ improperly considered the lack of EEG evidence in determining that Cummings' seizure disability did not meet the listing criteria.  Next, Cummings argues that the ALJ did not properly consider the medical findings to determine Cummings' Residual Functional Capacity (RFC).

## STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
>
> To make this determination the Commissioner employs a five-step, sequential evaluation process:
>
> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see* 20 C.F.R. §§ 404.1520, 416.920.

The standard for reviewing the Commissioner's decision is limited.  This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.

1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 401 U.S. 389, 401 (1971). The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record which support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

## BACKGROUND

Cummings was 30 years old at the time of the administrative hearing. (R. 360). He at most has a ninth grade education.[1] (R. 359). In the past, Cummings worked as a stage technician, janitor, short order cook, cook helper, concession stand worker, waiter, cashier, fast food worker, car washer, painter, reel assembler, forklift operator, and security guard. (R. 388-91). Cummings alleges that he is unable to work due to his frequent seizures, short-term memory loss, constant migraine headaches, shoulder pain and vomiting. (R. 368). Cummings used marijuana before the alleged disability, but now he only uses marijuana occasionally to help with his nausea and

---

[1]The record also contains evidence that Cummings dropped out of high school after either the seventh (R. 245) or eighth (R. 371) grade.

migraine headaches. (R. 127, 385).

Cummings alleges that he became disabled because of a car accident on August 26, 2005. (R. 55). He was insured for disability insurance benefits through December 2008 (R. 60). After the accident, Cummings remained hospitalized from August 26, 2005 until September 14, 2005. (R. 143). During his hospitalization, CAT scans revealed small hemorrhages in the right frontal lobe and right lateral ventricle, and a small subarachnoid hemorrhage in the right frontal region of the brain. (R. 153, 163, 165). A follow-up CAT scan showed Cummings' brain within the normal limits. (R. 238).

In October 2005, Dr. Stephen Suggs, a neurologist, examined Cummings. (R. 293). Dr. Suggs noted that Cummings reported having one seizure and occasional headaches in the nine weeks since his car accident. (R. 293). After the examination, Dr. Suggs prescribed Depakote for headache and seizure protection. (R. 294). On a return visit in November 2005, Cummings reported continuing headaches and Dr. Suggs increased the Depakote dosage. (R. 292). On September 12, 2006, Dr. Suggs noted that Cummings' migraines were about the same and that Cummings had a tremor in his upper extremities. (R. 291). Further, Dr. Suggs noted that he increased Cummings' seizure management because Cummings had had another seizure some months earlier. (R. 291). In November 2006, Dr. Suggs noted that Cummings had been having "mini seizures" and headaches; Dr. Suggs suspected that stress might be playing a big role in Cummings' condition. (R. 290).

On January 19, 2006, Dr. Gauthier from the Community Free Clinic (CFC) examined Cummings and noted Cummings' complaints of short term memory and erectile dysfunction. (R. 232). In May 2006, Dr. Harris from the CFC diagnosed Cummings with migraines and seizure

after Cummings complained of continual migraines since September 2005 and occasional seizures. (R. 229).

On July 26, 2006, Dr. Khurshid Yousuf examined Cummings and noted, *inter alia*, Cummings' history of seizure disorder and complaints of chest pain, sinus trouble, occasional headaches, hearing loss and auditory hallucinations in the right ear. (R. 233). Although Cummings had been depressed and under a lot of stress, Dr. Yousuf noted that Cummings was a very pleasant, conscious, and alert person who did not appear to be in any distress. (R. 233).

On September 5, 2006, Dr. Lynley S. Ebeling examined Cummings after the Alabama Department of Rehabilitation Services referred him for a neuropsychological screening. (R. 237). During the examination, Cummings acknowledged difficulty swallowing; stomach problems; right shoulder/upper arm pain and weakness; numbness in the right upper part of his head; a high-pitched squeal in his right ear; decreased coordination and balance; possible decreased depth perception; altered sense of taste, now improved; nausea "all the time;" weight fluctuations; consistent dizziness; constant headaches; seizures; and decreased energy. (R. 239). Cognitively, Cummings acknowledged decreased concentration; slowed processing; word-finding difficulties; decreased reading comprehension; reduced directionality skills; and poor memory. (R. 239). He denied any problems with speech, comprehension, handwriting, math abilities, or judgment in problem-solving skills. (R. 239). Emotionally, he rated his level of depression at a 3 on a scale of 1-10, 10 representing severe depression. (R. 239). Cummings denied any significant anxiety or moodiness; however, he expressed that his temper has increased since the accident and he has become physically aggressive. (R. 239). Finally, Cummings acknowledged some "auditory hallucinations," on a daily basis; however, he denied any voices

speaking to him when no one was present. (R. 239).

During the neuropsychological screening, Dr. Ebeling observed Cummings and she saw no evidence of visual acuity difficulties or formal thought disorder. (R. 240). Dr. Ebeling noted that Cummings was completely oriented to person, place, time, and situation. (R. 240). Cummings' mood was generally serious and his language was clear, coherent, and goal directed, although he appeared to have difficulty finding the right words to express himself. (R. 240).

At the neuropsychological screening, Cummings appeared to put forth good effort and cooperation; however, he was clearly concerned about wanting to get disability and back payments, which may have affected his full cooperation on some tasks. (R. 240). Nevertheless, Dr. Ebeling did not observe patterns consistent with lack of effort or purposeful intent to do poorly. (R. 240).

After completing the screening, Dr. Ebeling concluded that although Cummings clearly incurred a significant brain injury, he saw some evidence of exaggeration given his desire to obtain disability. (R. 245). Further, Dr. Ebeling stated that Cummings admitted to not having a significant desire to work steadily even prior to his accident. (R. 245). Dr. Ebeling also stated that decreased right upper extremity function, headaches, possible visual difficulties, and seizures were possible physical limitations on Cummings' ability to be gainfully employed. (R. 245).

The ALJ found that the medical evidence indicated that Cummings had right-side weakness, mini-seizures, and migraine headaches. (R. 27). The ALJ stated that these impairments were severe, but not severe enough to meet one of the impairments listed in 20 CFR pt. 404, subpart P, app. 1. (R. 27).

The ALJ evaluated Cummings' impairments under Section 11.02 of the listings. The

6

ALJ stated that the medical records in evidence did not conclusively document by EEG a detailed description of a typical seizure pattern, including all associated phenomena, occurring more frequently than once a month in spite of at least three months of prescribed treatment to meet the criteria for section 11.02 of Appendix 1, concerning convulsive epilepsy.

The ALJ also evaluated Cummings' impairments under Section 11.03 of the listings. The ALJ stated the medical records did not conclusively document 1) a detailed description of a typical seizure pattern, including all associated phenomena, occurring more frequently than once weekly in spite of at least three months of prescribed treatment; 2) an alteration of awareness of consciousness; and 3) transient postictal manifestations of unconventional behavior or significant interference with activity during the day to meet the criteria for section 11.03 of Appendix 1, concerning non-convulsive epilepsy. (R. 28).

Finally the ALJ evaluated Cummings' impairments under Section 11.04 of the listings. The ALJ stated that the medical evidence did not conclusively demonstrate that Cummings sustained a vascular accident with sensory or motor aphasia resulting in either 1) ineffective speech or communication or 2) significant and persistent disorganization or motor function in two extremities resulting in sustained disturbance of gross and dexterous movements or gait for more than three months after the accident to meet the criteria for section 11.04 of Appendix 1, concerning a central nervous system vascular accident. (R. 28).

Next, the ALJ assessed whether Cummings' retained the residual functioning capacity ("RFC") to perform the requirements of his past relevant work. (R. 28). Based on Cummings' testimony and medical records, the ALJ stated that Cummings retained the RFC to perform a medium level of exertional activity, standing or walking six hours in an eight hour day. (R. 28).

The ALJ concluded that Cummings could climb ramps and stairs, balance and stoop, kneel, crouch, and crawl on a frequent basis. (R. 28). The ALJ stated that because of Cummings' seizure disorder, he should not work around ladders, ropes, scaffolds, unprotected heights, or hazardous machinery. (R. 28). Further, the ALJ stated that Cummings should avoid work near large bodies of water and should not drive professionally. (R. 28). The ALJ found that Cummings should avoid concentrated exposure to extreme cold or heat, wetness, and humidity. (R. 28). The ALJ stated that because of Cummings' right side weakness, he would be limited as to frequent pushing and pulling and gross handling on his right side. (R. 28). Additionally, the ALJ stated that because of Cummings' frequent urination, he would be limited to occupations that allow brief unscheduled access to a restroom every two hours during the work day and jobs that could be performed while wearing an incontinence protection pad. (R. 28).

During Cummings' hearing, the ALJ posed a hypothetical situation to the vocational expert ("VE") based on his findings of Cummings' RFC. The VE stated that, based on the RFC described by the ALJ, Cummings would be able to perform his past jobs as a cashier and a fast food worker. (R. 394, 396).

## DISCUSSION

**A. The ALJ's Consideration of the Lack of EEG Evidence**

Cummings argues on appeal that the ALJ erred when he considered the lack of EEG evidence in determining that Cummings' disability did not meet the epilepsy listing requirements. (Doc. 8, p. 9). The listings for epilepsy do not require EEG documentation; however, they do require detailed documentation of a typical seizure pattern and frequency of the seizures. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 11.02, 11.03 (2009).

While the ALJ noted the lack of an EEG in the record, he also noted that the medical records in evidence did not meet the requirements of the listings.  The claimant has the burden of proving that an impairment meets or equals a listed impairment. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).  If the claimant contends that an impairment equals a listed impairment, the claimant must present evidence that describes how the impairment has such an equivalency. *Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (1987).  Because no doctor diagnosed Cummings with epilepsy, Cummings had to prove that his condition was *equivalent* to the epilepsy listing requirements.

Even though the ALJ erroneously relied on the lack of EEG evidence in the record, his reliance was not fatal to his conclusion because Cummings did not meet his burden of proving that his disability met or medically equaled any one of the listed impairments.  The applicable listings require a reporting physician to provide at least one detailed description of a typical seizure. 20 C.F.R., Part 404, Subpart P, Appendix 1, Listing 11.00(A).  If a report from a physician is unavailable, the listings require testimony of persons, other than the claimant, describing the type and frequency of the seizures. *Id.*

The ALJ noted that the medical records did not conclusively show a detailed description of Cummings' seizure pattern or that Cummings' seizures were frequent. (R. 27-28).  The medical records only contained vague comments regarding Cummings' report of seizures.  Furthermore, no person, besides Cummings, testified as to the type and frequency of the seizures.  Therefore, the ALJ's finding that Cummings does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments is supported by substantial evidence in the record.

**B. The ALJ's Consideration of the Medical Evidence in his RFC Findings**

Cummings argues that the ALJ gave "no consideration" to medical evidence showing Cummings' restricted right upper arm function, continued headaches, and visual difficulties. But the ALJ noted that the medical evidence established the existence of the impairments. (R. 33). The ALJ referred to reports from Decatur Neurology, CFC, and the emergency room showing Cummings' reported right shoulder pain, double vision, and headaches. (R. 31-33). While the ALJ did not doubt the existence of these impairments, he did question the severity of the impairments. (R. 33).

A three-part "pain standard" applies when a claimant attempts to establish disability through his own testimony of subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1191).

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.* This standard also applies to complaints of subjective conditions other than pain. *Id.*

Because the medical records did not contain objective medical evidence of the severity of Cummings' impairments, the ALJ made a severity finding based on subjective evidence. First, the ALJ noted that the medical records do not objectively document the frequency or severity of Cummings' headaches, shoulder pain, or vision problems. (R. 33).

Next, the ALJ determined whether Cummings' testimony as to the severity of his impairments was credible. A claimant's daily activities may be considered in evaluating and discrediting complaints of pain and other subjective conditions. *Wolfe v. Chater*, 86 F.3d 1072,

1078 (11th Cir. 1996). Cummings testified that he watched his two young children during the day. (R. 361). The ALJ concluded that Cummings' testimony regarding the severity of his conditions was not credible because of Cummings' ability to take care of his five year old and three year old children on a daily basis while his wife works. (R. 29, 34). Furthermore, the ALJ discredited Cummings' testimony because during an evaluation, Dr. Ebeling noted Cummings' lack of desire to work and the fact that he was clearly concerned about obtaining disability benefits. (R. 33, 245).

The ALJ's rationale for rejecting Cummings' subjective complaints of disabling conditions provides the court with the requisite level of specificity to withstand any allegations of error. The ALJ is the sole determiner of credibility. *Daniels v. Apfel*, 92 F. Supp. 2d 1269, 1280 (S.D. Ala. 2000) (*citing Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971)).[2] Consequently, the court should not disturb a clearly-stated credibility finding unless substantial evidence does not support it. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The ALJ's assessment of Cummings' credibility is clearly articulated and corroborated by substantial evidence in the record; therefore, the court concludes that substantial evidence exists to support the ALJ's RFC conclusion.

---

[2]*See also, Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

## CONCLUSION

For the reasons stated above, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be AFFIRMED.

DONE and ORDERED this 24th day of September, 2009.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE